Filed 2/20/14  P. v. Ramos CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B249460 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA078756) |
| v. | |
| EDWARDO RAMOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Edwardo Ramos, appeals from the judgment entered following revocation of probation previously granted after his plea of no contest to possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1))[1] and his admission he had served two prison terms within the meaning of section 667.5, subdivision (b). The trial court sentenced Ramos to 16 months in state prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

At approximately 3:57 a.m. on September 17, 2011, Los Angeles County Deputy Sheriff Jeremiah Hooper and his partner were on patrol in the City of Hawthorne. The deputies had responded to a call regarding an assault with a deadly weapon, a firearm, when they observed a black 4Runner being driven south on Inglewood Avenue toward Imperial Highway. As the 4Runner and the driver, Ramos, matched the description of the vehicle and the suspect in the reported assault case, when Ramos, after committing numerous traffic violations, pulled into a gas station at 4755 Imperial Highway, the deputies followed him.

The deputies stopped next to the 4Runner. Hooper, who had been sitting in the passenger seat of the patrol car, got out, approached Ramos, who was alone in the 4Runner, and decided to conduct a search of the vehicle. Ramos, who was on parole at the time, got out of the 4Runner, raised both his hands and said, " 'I quit.' " When Hooper then looked inside the car, he saw a gun under the front driver's seat. Hooper removed the weapon, which was a loaded .45 caliber firearm. It was then determined that the car was registered to one Ofelia Ibarra.

2. *Procedural history*

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The facts have been taken from the transcript of the preliminary hearing and the police report.

Following a preliminary hearing, on October 18, 2011 an information was filed in which Ramos was charged with one count of possession of a firearm by a felon in violation of former section 12021, subdivision (a)(1). It was further alleged that, in July 2007, he had been convicted of the felonies of the sale or transportation of a controlled substance in violation of Health and Safety Code section 11352 and possession of certain controlled substances while armed with a firearm in violation of Health and Safety Code section 11370.1. In addition, he had served prison terms for each of the two narcotics-related crimes within the meaning of section 667.5.

On February 21, 2012, Ramos filed a *Pitchess*[3] motion in which he requested "[t]he names, address[es], and telephone number[s] of all persons who [had] filed complaints . . . against Deputy Jeremiah Hooper . . . and [his partner,] Deputy Delgadillo[,] . . . relating to . . . false reports, perjured testimony, lying and untruthfulness." Ramos also asked for any reports of disciplinary actions taken against either deputy which involved the use of excessive force or the use of false reports or perjured testimony. In support of his motion, Ramos claimed the information contained in the police report and the transcript of the preliminary hearing was "false." Ramos indicated he had simply been walking through the gas station. He had not been driving the 4Runner and he "had no knowledge [regarding] the vehicle or the firearm."

At a hearing held on March 21, 2012, Ramos indicated he had never made the statement, " 'I quit.' " He stated he had said nothing to the deputies before they "put [him] in the [patrol] car." Ramos's counsel then informed the trial court that a gunshot residue test had been performed and the results had "[come] back negative on Mr. Ramos." Further, "there [were] no prints on the gun."

The trial court indicated it appeared Ramos had simply denied he had been in the car and committed the traffic violations. The court continued, noting Ramos had said he had been " 'walking through the gas station, and [he had] no connection to this car, and the police just stopped [him].' " The court concluded Ramos's version of the events was

---

[3]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

3

not "a plausible factual scenario that would justify going into the personnel records of [the deputy] sheriffs." Accordingly, the court denied Ramos's *Pitchess* motion and request for an in-camera hearing.

On March 21, 2012, an amended information was filed in which Ramos was charged with one count of possession of a firearm by a felon and it was alleged that, in July 2007, he suffered two felony convictions for narcotics-related offenses for which he served prison terms pursuant to section 667.5, subdivision (b). On April 11, 2012, a second amended complaint was filed and Ramos was arraigned. Ramos then "personally and explicitly" waived his right to a trial by court or jury, his right to confront and cross-examine the witnesses against him, his right to subpoena witnesses and to present a defense and his right to remain silent. Ramos then pled no contest to possession of a firearm by a felon in violation of former section 12021, subdivision (a)(1) and admitted previously having served prison terms pursuant to section 667.5, subdivision (b). Citing *People v. West* (1970) 3 Cal.3d 595, Ramos indicated he was entering the plea "to take advantage of a plea bargain."[4] After Ramos waived arraignment for judgment, the trial court suspended imposition of sentence and placed him on formal probation for 36 months, one of the terms of which was that he serve 444 days in county jail. The court awarded Ramos presentence custody credit for 222 days actually served and 222 days of conduct credit, for a total of 444 days, then released Ramos from custody. Ramos was ordered to pay a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $240 restitution fine (§ 1202.4, subd. (b)) and the costs of probation services as determined by the probation officer (§ 1203.1b).

Ramos's probation was revoked on February 13, 2013. At proceedings held on June 7, 2013, Ramos waived his right to a hearing to determine whether he was in violation of the terms of his probation and instead admitted he was in violation of probation for failing to obey all laws. Ramos's counsel joined in the admission and the

_____

[4] At the March 21st proceedings, the prosecutor had indicated that an offer had been made. The prosecutor had stated, "The offer is plead, admit the one-year prior, three years probation, time served."

4

trial court found Ramos in violation of probation. The trial court then noted Ramos had received presentence custody credit for 444 days when he was originally granted probation and, since his probation had been revoked, he had been in custody for 117 days. The court indicated the People were willing to dismiss the new case pending against him[5] if the trial court imposed sentence, rather than again granting a term of probation and, when sentence was imposed, the court failed to give to Ramos credit for the 444 days previously served. At sentencing, Ramos would instead receive credit for only the 117 days spent in county jail since the revocation of his probation. Ramos agreed to waive his right to the 444 days of back time "for all purposes" and to take the People's offer.

After some discussion regarding whether Ramos's sentence should be served in county jail or state prison, the trial court sentenced Ramos to the low term of 16 months in state prison. The court awarded Ramos presentence custody credit for 117 days actually served and 116 days of good time/work time, for a total of 233 days. The court imposed a $240 probation revocation restitution fine (§ 1202.44), then committed Ramos to the custody of the sheriff forthwith for delivery to the Department of Corrections.

Ramos filed a timely notice of appeal on June 12, 2013.

## CONTENTIONS

After examination of the record, counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed November 21, 2013, the clerk of this court advised Ramos to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

## REVIEW ON APPEAL

---

[5] On February 11, 2013, Ramos had been arrested for possession for sale of methamphetamine (Health & Saf. Code, §11378), the sale of methamphetamine (Health & Saf. Code, § 11379), burglary (§ 459), smuggling a controlled substance into a jail (§ 4573) and a gang enhancement (§ 186.22, subd. (b)(1)).

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.